**UNITED STATES of America**

v.

**Scott EVASCHUCK**

**No. 99–11–CR–T–17.**

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 1, 1999.

Jay Hoffer, U.S. Attorney's Office, Tampa, FL, for U.S.

Kevin Jon Napper, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, M.D. Purcell, Jr., Barr, Murman, Tonelli, Herzfeld & Rubin, Tampa, FL, William F. Jung, Black, Jung & Sisco, Tampa, FL, for Scott Evaschuk, defendant.

## ORDER ON MOTION TO SUPPRESS AND MOTION TO DISMISS

KOVACHEVICH, Chief Judge.

This cause comes before the Court on the following:

1. Defendant's motion to suppress (Docket No. 21), the government's response (Docket No. 28), and the Defendant's reply (Docket No. 31);

2. Defendant's motion to dismiss Count 9 of the indictment (Docket No. 35), and the government's response (Docket No. 40); and

3. Defendant's motion for accelerated disclosure of 404(b) evidence (Docket No. 36), and the government's response (Docket No. 39).

## BACKGROUND

Defendant Scott Evaschuk is the owner and operator of West Coast Aircraft Engineering [hereinafter "West Coast"] and Excalibur Aviation Services, Inc. [hereinafter "Excalibur"]. Both of the Defendant's companies are tenants in a building owned by Dolphin Aviation [hereinafter "Dolphin"]. The parties agree that there is no corporate relationship between Dolphin

Aviation and the companies owned by the Defendant. The Defendant is neither a principal nor an employee of Dolphin. However, the Defendant's companies lease office space in the building owned by Dolphin, and the Defendant does maintenance work on planes owned by Dolphin.

This case involves the Defendant's alleged falsification of aircraft maintenance records. The Federal Aviation Administration [hereinafter "FAA"] issues air agency certificates to aircraft repair stations. These certificates authorize a repair station to perform maintenance on airplanes and airplane parts. Aircraft repair stations are required to certify the airworthiness of the parts on which they have performed maintenance. A person who has maintained, rebuilt, or altered an airplane or an airplane part must make an entry in the plane's maintenance record. The owner or operator of a plane is required to keep maintenance records for the plane.

When parts are removed from an airplane for maintenance, inspection tags are attached to them. The tags are color-coded according to the status of the part. Yellow tags are attached to parts that have been serviced. Once the maintenance is complete, the tag is removed from the part. Although the tag may then be discarded, it is often attached to the maintenance records in the plane's logbook.

The government states that on November 17, 1995, the Defendant placed an order with a Bradenton, Florida, printing company for a large quantity of yellow tags with the names of several certified repair stations. These yellow tags were paid for with a Dolphin Aviation corporate check. Dolphin Aviation had surrendered its repair station certificate to the FAA in October 1992. None of the repair stations whose yellow tags the Defendant ordered have any business connection with Dolphin Aviation. All but one of the repair stations are located in other states, and two of them were defunct at the time the order was placed. Further, the Defendant requested the printing company to change the format and text of the yellow tags from the format and text ordinarily used by the companies whose tags he ordered.

Based on these facts, on July 14, 1997, the government obtained a search warrant for the property occupied by Dolphin and West Coast. Magistrate Judge McCoun signed the search warrant, but limited the scope of the search to records relating to falsely certified aircraft components. Judge McCoun also amended the search warrant to state that "the relevant time frame for such documents shall be November 17, 1995, to the present."

Among the documents seized by government in its execution of the search were logbooks containing the airline maintenance records of planes owned by Dolphin and maintained by West Coast, including yellow tags that the government alleges are fraudulent. The records seized by the government are apparently the property of Dolphin. Dolphin filed an emergency motion for the return of property on September 3, 1997, in which it alleged that all of the documents and records seized by the government during the execution of the search warrant were the property of Dolphin. The motion was accompanied by an unsigned affidavit from the owner of Dolphin asserting that the property seized belonged to him.

However, the offices in which the records seized by the government were located are occupied only by the Defendant's companies. The Defendant routinely locks the doors to those offices, and he is the only person with keys to the offices.

On January 12, 1999, a nine-count indictment was entered against the Defendant. Counts One through Eight allege that the Defendant made false statements to the FAA by representing that maintenance had been performed on several planes by an FAA authorized repair station, when it had not been performed by the repair station reflected in the documents, in violation of 18 U.S.C. §§ 1001–1002. Count Nine alleges that the Defendant made false representations, through the mail, to

the Aruban Department of Civil Aviation regarding Dolphin's qualification as a aircraft maintenance facility, in violation of 18 U.S.C §§ 1341–1342.

## ANALYSIS

### I. Motion to Suppress (Docket No. 21)

The Defendant now moves for the suppression of some of the documents seized by the government during the search of the premises of Dolphin Aviation and West Coast. The Defendant argues that the documents and records dated earlier than November 17, 1995, should be suppressed because they exceeded the scope of the search warrant. The government argues that the Defendant lacks standing to challenge the search, and that the documents dated earlier than the date specified on the search warrant fall within an exception to the rule limiting seizure to the items specified in a search warrant.

### A. Standing

 The government argues that the Defendant does not have standing to challenge the seizure of documents beyond the scope of the search warrant, because the documents seized did not belong to him or his companies, but to Dolphin Aviation. "To challenge successfully the admissibility of evidence obtained unconstitutionally, a defendant must establish that his own Fourth Amendment rights were violated by the conduct upon which he wishes to base exclusion." *United States v. Vicknair*, 610 F.2d 372 (5th Cir.1980).

Properly stated, the issue before this Court is not whether the Defendant has standing to challenge the search, but whether he had a legitimate expectation of privacy in the areas searched. In a recent Supreme Court case, the Court stated that "in determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" *Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 472, 142 L.Ed.2d 373 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143–44, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). The Court stated further that "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Carter*, 525 U.S. 83, 119 S.Ct. at 472 (quoting *Rakas*, 439 U.S. at 143, 99 S.Ct. 421).

 Thus, in order to determine whether the Defendant may properly challenge the search, the Court must determine whether the Defendant had a legitimate expectation of privacy in the commercial premises occupied by the corporations he owned. "Property used for commercial purposes is treated differently for Fourth Amendment purposes than residential property." *Carter*, 525 U.S. 83, 119 S. Ct. at 474. In general, there is a lesser expectation of privacy in commercial premises than in a residence. *See id.* 525 U.S. 83, 119 S.Ct. at 474, *United States v. Chaves*, 169 F.3d 687 (11th Cir.1999). Nonetheless, an employee may in certain circumstances have a legitimate expectation of privacy in the workplace. *See, e.g., O'Connor v. Ortega*, 480 U.S. 709, 718–719, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987); *Mancusi v. DeForte*, 392 U.S. 364, 369, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968).

 "[T]he question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." *O'Connor*, 480 U.S. at 718, 107 S.Ct. 1492. Factors courts have considered in determining whether a person has a reasonable expectation of privacy in commercial premises include: whether the person shared the area with anyone else, *see O'Connor*, 480 U.S. at 718, 107 S.Ct. 1492; whether others could be expected to enter the area or disturb papers in it without permission, *see Mancusi*, 392 U.S. at 369, 88 S.Ct. 2120; and whether the person has a key, *see Chaves*, 169 F.3d at 691.

The Defendant argues that he had a reasonable expectation of privacy in the offices of West Coast. He is the owner, operator, and sole shareholder of that business. He states further that he was the only person to use those offices, and the only person with the keys to them. The facts of *Chaves* are very similar to the facts of the instant case. In *Chaves*, the Eleventh Circuit stated:

> Chaves had the only key to the warehouse, giving him a measure of control and the ability to exclude others. While possession of a key, without more, might not be sufficient to establish a reasonable expectation of privacy, Chaves seems to have had the only key and, what is more, he also kept personal and business papers at the warehouse. In these circumstances, the Fourth Amendment protects Chaves' privacy interests in the warehouse.

169 F.3d at 691.

■ Notwithstanding the factors demonstrating that the Defendant had an expectation of privacy in the area searched, the government argues that any expectation of privacy the Defendant had in the records seized was not a reasonable one, because airplane maintenance records must be made available to the government on request. An expectation of privacy in documents is not reasonable where a government agency has the right to inspect the records. *See United States v. Welliver*, 976 F.2d 1148 (8th Cir.1992). Federal regulations require the owner or operator of an airplane to keep maintenance records for a period of one year, and to provide them on request to an agent of the FAA or the National Transportation Safety Board. 14 C.F.R. § 91.417.

At this time, however, it is not necessary to determine whether the government's right to inspect airplane maintenance records renders a general expectation of privacy in maintenance records unreasonable, because that right did not apply to the particular records at issue here. The regulations cited by the government require only that airplane owners "make mainte-

nance records required to be kept by this section available for inspection" to government agents. 14 C.F.R. § 91.417(c). Maintenance records are required to be kept for one year. 14 C.F.R. § 91.417(b)(1). The records the Defendant seeks to have suppressed are those dated before November 17, 1995. The search warrant was dated July 14, 1997. By that date, the maintenance records at issue were more than a year old and were no longer required to be kept.

The Court agrees with Defendant that he had a reasonable expectation of privacy in the offices West Coast and Excalibur rented from Dolphin, because he was the owner and operator of those corporations, the only person who used those offices, and the only person who had the keys to the offices. Further, the documents at issue here were not records that were required to be made available for government inspection. The Court will therefore consider the merits of the Defendant's argument.

**B. The Scope of the Search Warrant**

■ The Defendant argues that the search and seizure of documents dating from before November 17, 1995, exceeded the scope of the search warrant, and that those documents should therefore be suppressed. "The Fourth Amendment requires that a warrant particularly describe the place to be searched and the items or persons to be seized; exploratory rummaging is prohibited. Only items described in the search warrant may be seized." *United States v. Jenkins*, 901 F.2d 1075, 1081 (11th Cir.1990) (citation omitted).

In this case, the search warrant was specifically limited to items dated after November 17, 1995. The Defendant asserts that, despite the express limitation in the search warrant, the agents executing the search warrant seized documents dating from the 1960's through the early 1990's. The Defendant now seeks to have the documents that exceeded the scope of

the search warrant suppressed. The government does not dispute that some of the documents seized bore dates outside of the time frame designated in the search warrant. Nonetheless, the government argues that seizure of the documents was permissible because: (1) the documents were in plain view, (2) the search was reasonable under the circumstances, (3) the documents have a sufficient nexus to the crime under investigation, or (4) the documents were bound with other documents that were within the scope of the search warrant.

### 1. The Plain View Doctrine

 The "plain view" doctrine is an exception to the rule prohibiting the seizure of items outside of the scope of the search warrant that arises "when in the course of performing a lawful search for an item listed on the warrant, the officers come across other articles of incriminatory character." *Jenkins*, 901 F.2d at 1081 (quoting *United States v. Johnson*, 713 F.2d 654, 660 (11th Cir.1983)). For an item outside the scope of a search warrant to be constitutionally seized under the plain view doctrine, "the seizing officer must (1) have independent justification for being in a position to see the items; (2) must discover the items inadvertently; and (3) must immediately observe that the items are evidence." *Jenkins* 901 F.2d at 1082.

 The Defendant asserts that the maintenance records were contained in logbooks, and that the time span of the records contained in each logbook was clearly identified on the exterior of the logbook. The Defendant argues that because the search warrant clearly limited the scope of the search to documents dated from November 17, 1995, to the present, the government agents had no reason to search the logbooks clearly marked as containing only maintenance records from before that date.

Given the scope of the search warrant, the government agents were limited to searching for documents dating from November 17, 1995, onward. There was no reason for the government to search for such documents in logbooks containing only documents that predated the time frame specified in the search warrant. Any government agent examining the documents in a logbook that was marked with dates indicating that it contained only documents beyond the scope of the search warrant did not have a legitimate reason for being in a position to see the documents, and did not come across the documents inadvertently.

Further, the government's own argument undercuts the legitimacy of its claim that the plain view doctrine applies. The government states in its response brief that seizure of all of the maintenance records, including those dated before the date specified in the search warrant, was necessary, because only by seizing the documents "could agents seek to obtain both forensic and other, conventional evidence as to the authenticity or lack of authenticity of all such yellow tag certificates." (Docket No. 28, at 11). If the agents could determine the authenticity of the documents in question only by seizing those documents, then the agents did not immediately upon viewing those documents understand that the documents were evidence. The plain view doctrine does not apply in this case.

### 2. Reasonableness Under the Circumstances

 The government argues, based on *United States v. Wuagneux*, 683 F.2d 1343 (11th Cir.1982), that in considering whether the search exceeded the scope of the warrant, the Court must consider "whether the search and seizure were reasonable under all the circumstances." *Id.* at 1352. That case does not support the government's argument. The sentence following the language quoted by the government states that "the permissible scope of a search is governed by the terms of a warrant ... a search may be as extensive as reasonably required to locate the items

described in the warrant." *Id.* (citation omitted). As discussed above, in this case, a search and seizure of logbooks containing only documents that were beyond the scope of the search warrant was not reasonably required to locate the items described in the search warrant.

Moreover, the search and seizure described in *Wuagneux* was conducted with considerably more concern for the scope of the search warrant than was demonstrated here. In that case, when "an agent found a document he believed fell within the authorization of the warrant, he removed the document and placed it in a box." *Id.* at 1351–52. Another agent and a government attorney reviewed the documents being removed, and if either "thought a particular document did not meet the criteria of the warrant, the document was returned to the file." *Id.* at 1352. In contrast, in this case, the government agents seized maintenance records going back several decades beyond the scope of the search warrant, apparently with no concern for whether they fell within the clear limitations of the search warrant.

### 3. Sufficient Nexus to the Crime Under Investigation

 Relying on *United States v. Davis*, 589 F.2d 904 (5th Cir.1979), the government argues that maintenance records dated before November 17, 1995, had a "sufficient nexus" to the crime under investigation to be subject to seizure. The crime being investigated in *Davis* was a mail bombing. The search warrant in that case listed string, white paper and corrugated paper. While "properly executing the warrant," government agents discovered newspaper that matched pieces of newspaper found at the scene of the explosion. *Id.* at 906. The *Davis* court stated the newspaper "had a sufficient nexus to the crime being investigated to be subject to seizure." *Id.*

The government argues that the maintenance records from before the date specified in the search warrant likewise had a sufficient nexus to the crime being investigated. There are two important distinctions between this case and *Davis*, however. First, the agents in *Davis* found the pieces of newspaper while they were "properly executing" the search warrant for the other items. The government agents in this case would not have come across the documents that were beyond the scope of the search warrant, if the agents had not exceeded the scope of the warrant.

Second, it would have been immediately apparent to the agents discussed in *Davis*, who discovered the pieces of newspaper, that the pieces of newspaper were evidence of the crime being investigated. Here, the government discovered the fraudulent nature of the maintenance records at issue only after they had already been seized. The fact that a search ultimately produced evidence of a crime cannot overshadow the fact that, at its inception, the search was unconstitutional. Such hindsight justification is not consistent with the requirements of the Fourth Amendment.

### 4. Attachment to Relevant Documents

 The government states that some of the documents that were outside the scope of the search warrant were bound in logbooks that also contained documents that were within the scope of the search warrant. It argues that the seizure of the full logbook was permissible in order to maintain the integrity of the logbooks. Based on the arguments made by the Defendant, the Defendant does not appear to be seeking the suppression of documents found in logbooks that include documents within the scope of the search warrant. In any event, seizure of the full logbook rather than removal of some of its parts is both reasonable and consistent with the practice endorsed by the Eleventh Circuit in *Wuagneux*. *See* 683 F.2d at 1352.

Defendant's motion to suppress will be granted. The Defendant may properly challenge the scope of the search warrant, because he had a legitimate expectation of privacy in the area searched. The govern-

ment agents clearly exceeded the scope of the search warrant. The seizure of documents dated prior to November 17, 1995, was improper, except for those documents that were contained in logbooks also containing documents dated after November 17, 1995. For that reason, all documents dated prior to November 17, 1995, found in logbooks containing only documents dated prior to November 17, 1995, will be suppressed.

## II. Motion to Dismiss (Docket No. 35)

 The Defendant moves for the dismissal of Count Nine of the indictment. Count Nine of the indictment charges the Defendant with mail fraud, alleging that the Defendant falsely represented to the Aruban Department of Civil Aviation [hereinafter "DCA"] that Dolphin possessed a particular FAA certificate, when in fact Dolphin did not possess that certificate. The indictment alleges that it was a part of the Defendant's scheme that the Defendant would obtain contracts to perform maintenance work on Aruban airplanes as a result of the false statements. The Defendant argues that the conduct described in the indictment does not constitute mail fraud in violation of 18 U.S.C. § 1341 and 1342, because the Defendant himself did not stand to receive any money or property because of the alleged fraud.

 The elements of mail fraud in violation of 18 U.S.C. § 1341 are "that the defendant (1) intentionally participated in a scheme to defraud and (2) used the mails to execute the fraudulent scheme." *United States v. Hooshmand*, 931 F.2d 725, 731 (11th Cir.1991). Relying on *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), the Defendant argues that the acts alleged do not satisfy these elements. "In *McNally*, the Supreme Court held that the mail fraud statute applied only to schemes to defraud for money or property and did not include schemes to defraud individuals of intangible, non-property rights, *e.g.*, a citizen's right to honest government." *Hooshmand*, 931 F.2d at 731.

The Defendant argues that the government cannot prove that he intended to defraud the DCA out of any money or property, because he personally did not stand to gain money or property from the alleged fraud. The Defendant has no corporate or financial relationship with Dolphin, the corporation about which the allegedly false statements were made. Thus, the Defendant argues, the alleged false statements would not have benefitted him in any way. Without evidence of a financial motive, the Defendant argues, the government cannot prove mail fraud.

 The Defendant's argument misconstrues the Supreme Court's holding in *McNally* and the elements of a mail fraud claim. *McNally* states that a conviction for mail fraud requires that the fraud be intended to deprive another of money or property, rather than intangible, non-property rights. *See* 483 U.S. at 356–360, 107 S.Ct. 2875. It does not require that the money or property be intended to benefit the person making the false statement. The indictment alleges that the motivation for the false statements was to receive contracts for the repair of Aruban planes. If the government proves that allegation, such contracts would constitute property sufficient to satisfy the elements of the offense of mail fraud. Accordingly, it is

**ORDERED** that:

1. Defendant's motion to suppress (Docket No. 21) be **GRANTED;** in that all documents dated prior to November 17, 1995, found in logbooks containing only documents dated prior to November 17, 1995, be **SUPPRESSED;**

2. Defendant's motion to dismiss Count 9 of the indictment (Docket No. 35) be **DENIED;** and

3. Defendant's motion for accelerated disclosure of 404(b) evidence (Docket No. 36) be **DENIED** as moot.