UNITED STATES of America,
Plaintiff,

v.

Jason BEST, Defendant.

No. 2:00–CR–171.

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 10, 2003.

Gary T. Bell, United States Attorneys Office, Hammond, IN, for Plaintiff.

Clark W. Holesinger, Portage, IN, Thomas W. Vanes, Merrillville, IN, for Defendant.

## ORDER

LOZANO, District Judge.

This matter is before the Court on: (1) Defendant's pro se Motion for a New Trial, filed August 26, 2002; (2) Defendant's pro se Motion for a New Trial (Rule 33) and Appointment of New Counsel, filed September 16, 2002; and (3) Defendant's Motion to Suppress [Evidence Related to Count 8] and Memorandum, filed September 16, 2002. For the reasons set forth below, Defendant's August 26, 2002, and September 16, 2002, motions for a new trial are **TAKEN UNDER ADVISEMENT** Defendant's Motion to Suppress [Evidence Related to Count 8] and Memorandum is **DENIED**. The parties are **ORDERED** to submit, on or before March 3, 2003, their written final arguments on the September 16, 2002, motions to suppress

evidence related to Counts 2 and 3. The parties are **FURTHER ORDERED** to include citations to the transcripts of the hearings on those motions.

*BACKGROUND*

Following his July 23, 2002, conviction on Counts 1, 2, 3, 7, and 8 of the superseding indictment, Defendant, while represented by appointed Attorneys Thomas Vanes (Vanes) and Clark Holesinger (Holesinger), filed pro se motions for a new trial based on the alleged ineffectiveness of his attorneys. Despite his pro se filings, Defendant remains represented by counsel. Defendant seeks leave to dismiss his appointed lawyers and replace them with new appointed counsel. Defendant complains that his attorneys rendered constitutionally insufficient representation by, in part, failing to file timely motions to suppress certain evidence. *See Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (describing test for assessing ineffective assistance of counsel where claim includes failure to file timely motions to suppress).

In order to assess whether Defendant deserves new appointed counsel during at least the sentencing stage of this case, the Court ordered Attorneys Vanes and Holesinger to file the motions to suppress which they did not timely file before trial. On September 16, 2002, counsel complied by filing four such motions. At the Court's request, the parties submitted further briefs addressing the Government's position that Defendant has not met his burden of establishing the legitimate expectation of privacy necessary to challenge the search related to Count 8. This order addresses that issue.

*DISCUSSION*

The Court's analysis below incorporates evidence presented during *United States v. Dennis Best,* 2:99–CR–189—the prosecution of Defendant's cousin, Dennis Best, and Marcus Gardner, the only individual who was arrested inside 798 Porter Street on December 3, 1999. This Court presided over the February 22, 2000, trial in that case, which involved repeated testimony related to the December 3, 1999, search and the building at 798 Porter Street. The Court relies on such evidence because it assumes that if Defendant's attorneys had filed timely motions to suppress before trial, the same evidence would have been presented during the pre-trial hearing(s) on such motions, either through live testimony or by introduction of the relevant transcripts. The Court's reliance on such evidence cannot surprise the parties in this case: Both the Government and Defendant have cited testimony from *United States v. Dennis Best* in their motions and arguments on Defendant's various post-trial motions to suppress, including the instant motion.

Similarly, the Court's analysis incorporates evidence presented during Defendant's July 2002, trial. The Court again assumes that if Defendant's attorneys had filed timely motions to suppress before trial, the same evidence would have been presented during the hearing(s) on such motions. The parties cannot be surprised by the Court's reliance on such evidence because they both cited trial testimony in their briefs and arguments on the pending motions to suppress.

*Facts*

On December 3, 1999, officers with the Gary Response Investigative Team (GRIT) executed an oral search warrant for the building located at 798 Porter Street in Gary, Indiana. (Defendant challenges the technical validity of the oral warrant, but the Court's conclusion below eliminates the need to address the merits of Defendant's challenge or the related facts.) The Return of Search Warrant completed by GRIT Agent John Jelks on December 3, 1999 (and attached as an exhibit to the

Government's September 23, 2002, filing), lists the items seized during the search, including "numerous blue plastic containers," "21 knotted baggies containing a rock[-]like substance," a rifle, various shotgun shells, court documents belonging to Dennis Best, and a gas/electric company bill "[a]ddressed to Damian [sic] Williams." (*See also* D. Best Trial Tr. at 238–39.) The rock-like substance turned out to be crack cocaine. (D. Best Trial Tr. at 129–30, 237–38, 241–42.) Based on the lack of any identifying information linking the property to Defendant, as well as Defendant's failure to claim any of the seized items, it appears that none of his personal property was seized. And, as Defendant's motion to suppress points out, he was not present during either the search or surveillance that preceded it. In fact, Defendant was not arrested in connection with the instant case until October 5, 2000. (DE # 34.)

In part as a result of the search, Defendant was eventually charged with maintaining 798 Porter Street, between October 1999, and December 3, 1999, for the purpose of distributing crack cocaine, in violation of 21 U.S.C. section 856(a)(1) ("Establishment of Manufacturing Operations"). In his motion to suppress, Defendant acknowledges that "certain items of contraband were found" during the search. He asks the Court to suppress "all evidence, including ... statements, confessions, and crack cocaine obtained" in the search.

On the day of the search, the building at 798 Porter Street was ostensibly a residential dwelling—a house. The affidavit which GRIT Agent John Jelks submitted as part of his application for an oral search warrant describes 798 Porter Street as "a single[-]story frame residence" with "doors on the East and North sides of the residence." The purported house had four rooms: a livingroom, a kitchen, and two bedrooms. (D. Best Trial Tr. at 231.)

The livingroom included a sofa, a love seat, an end table, a stereo, a television, and a video game console. (D. Best Trial Tr. at 235–36; 271; 277–78.) GRIT Agent Dale Tipton, who participated in the search, described 798 Porter Street as "very sparsely furnished." (D. Best Trial Tr. at 232.)

In fact, the evidence demonstrates that 798 Porter Street was not likely being used by anyone for a residential purpose, and especially not by Defendant. There was no stove or refrigerator at 798 Porter Street. (D. Best Trial Tr. at 236; 271; 419.) Nor was there running water or a functioning bathroom. (D. Best Trial Tr. at 271; 418.) Gardner and Dennis Best both testified that, during their time at the property, the absence of a functioning bathroom forced them to relieve themselves outside the building. (D. Best Trial Tr. at 271; 419.)

There is no evidence that Defendant *ever* lived at the property, and none of his motions make such a claim. Indeed, Defendant's November 22, 2002, memorandum concedes, at page 2, that the "evidence also showed that [the] residence was unoccupied at the time of the raid and during the time previous to the raid ...." Plus, when asked on direct examination what "Defendant's role with" 798 Porter Street was, Damien Williams testified that Defendant "drop[ped] off crack cocaine and pick[ed] up money." (Def.'s Trial Ex. 1 at 18.)

That is entirely consistent with Gardner's account of what was taking place at 798 Porter Street during the two weeks preceding the search. Gardner testified that he, Dennis Best, and a third person identified as "Eric" were working 8–hour shifts selling crack cocaine from the property. (D. Best Trial Tr. at 275.) The drugs were stored under a pillow on the couch. (D. Best Trial Tr. at 277.) During just his first day on the job, Gardner ob-

served Dennis Best sell crack to approximately 19 people at 798 Porter Street. (D. Best Trial Tr. at 273.) After knocking on the door, customers were let inside, where money and crack were exchanged. (D. Best Trial Tr. at 273–74.) After his 4 p.m. to midnight "shift" ended, Gardner left cash proceeds from the drug sales on a table next to the radio. (D. Best Trial Tr. at 275; 278.)

In response to Defendant's motion to suppress, the Government took Defendant to task on whether he could pursue his Fourth Amendment challenge to the search. In its September 23, 2002, November 6, 2002, November 21, 2002, and January 22, 2003, filings, the Government argues that Defendant has not demonstrated the legitimate expectation of privacy in 798 Porter Street necessary to attack the search.

Defendant initially maintained that he could demonstrate his subjective expectation of privacy in the property by relying on the testimony of Williams and Gardner. Defendant pointed to Williams' testimony that: (1) Defendant asked Williams to put the gas/electric bill in his (Williams') name; (2) Defendant paid Williams $100 to do so; and (3) Williams followed through on the request. (Def.'s Trial Ex. 1 at 18.) Defendant also cited Gardner's testimony that: (1) both Dennis Best and Defendant had keys to the property; and (2) Gardner, who did not have a key, saw Defendant use his key six times during the two weeks before the search. (D. Best Trial Tr. at 271–72.)

Citing, among others, *United States v. Ruth*, 65 F.3d 599, 604–05 (7th Cir.1995) (affirming district court's conclusion that "without an affidavit or testimony from the defendant[,] it is almost impossible to find a privacy interest because this interest depends, in part, on the defendant's subjective intent and his actions that manifest that intent"), the Government argued that

Defendant's reliance on the testimony of others was insufficient to establish *his* subjective expectation of privacy in 798 Porter Street.

Faced with contrary controlling authority, Defendant relented during the November 15, 2002, hearing and submitted the following handwritten affidavit as his exhibit 3:

1. My name is Jason Best.
2. On December 3, 1999, I had keys to 798 Porter Street, Gary, IN.
3. Between the period of October and December 3, 1999, I had access to the [sic] 798 Porter Street, Gary, IN because I was a renter.
4. I had an expectation that I would BE [sic] privacy in 798 Porter St., and access was restricted to those without keys.

I affirm under the penalties of perjury that the foregoing is true to the best of my information and belief.

*Analysis*

In order to pursue his Fourth Amendment claim with respect to the December 3, 1999, search and seizure at 798 Porter Street, Defendant must:

demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; i.e., one that has "a source outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."

*Minnesota v. Carter*, 525 U.S. 83, 90, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143–44 n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). This dual test is composed of subjective and objective components. *See Ruth*, 65 F.3d at 604. The Court will refer to these

substantive inquiries collectively as whether, on December 3, 1999, Defendant had a legitimate expectation of privacy in 798 Porter Street. *See, e.g., United States v. Padilla,* 508 U.S. 77, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993) (describing analysis of whether defendant could contest Fourth Amendment search as assessment of whether he had "legitimate expectation of privacy"). Defendant bears the burden of demonstrating his legitimate expectation of privacy. *Ruth,* 65 F.3d at 604–05 (citing *United States v. Duprey,* 895 F.2d 303, 309 (7th Cir.1989)); *United States v. Zermeno,* 66 F.3d 1058, 1061 (9th Cir.1995) (citing *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980)); *United States v. Baron–Mantilla,* 743 F.2d 868, 870 (11th Cir.1984). The Court makes this determination based on the totality of the circumstances. *United States v. Blaze,* 143 F.3d 585, 590 (10th Cir.1998); *Baron–Mantilla,* 743 F.2d at 870 (citing *Rakas,* 439 U.S. at 152, 99 S.Ct. 421 (1978) (Powell, J., concurring)); *see also United States v. Rush,* 890 F.2d 45, 48 n. 1 (7th Cir.1989) (incorporating "totality of circumstances" test in assessing whether police were justified in concluding that defendant had no expectation of privacy in possibly abandoned suitcase).

 The Fourth Amendment's prohibition on unreasonable searches and seizures applies not only to private residences, but also to property used for commercial purposes. *New York v. Burger,* 482 U.S. 691, 699, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (citing *See v. City of Seattle,* 387 U.S. 541, 543, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967)). "An owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable," and which exists with respect to traditional police searches conducted for the gathering of evidence. *Id.* However, "[p]roperty used for commercial purposes is treated differently for Fourth Amendment purposes from residential property. 'An expectation of privacy in commercial premises ... is different from, and indeed less than, a similar expectation in an individual's home.'" *Carter,* 525 U.S. at 90, 119 S.Ct. 469 (finding that defendants who were in another person's apartment for a short time, solely for purpose of packaging cocaine, had no legitimate expectation of privacy in apartment because, among other things, defendants "were essentially present for a business transaction" that was "purely commercial in nature") (quoting *Burger,* 482 U.S. at 700, 107 S.Ct. 2636).

Courts analyzing whether defendants could demonstrate the legitimate expectation of privacy necessary to challenge a Fourth Amendment search or seizure have considered the lower expectation of privacy attendant to commercial premises. *See United States v. Silva,* 247 F.3d 1051 (9th Cir.2001); *United States v. Sarkisian,* 197 F.3d 966 (9th Cir.1999); *United States v. Evaschuck,* 65 F.Supp.2d 1360 (M.D.Fla. 1999); *United States v. Macias–Treviso,* 42 F.Supp.2d 1206 (D.N.M.1999). So too will this Court.

 Defendant correctly concluded that he could not establish his subjective expectation of privacy in 798 Porter Street by simply relying on the testimony of others. This is especially true when such testimony comes from Government witnesses such as Gardner and Williams. *Ruth,* 65 F.3d at 604–05 (rejecting defendant's attempt to meet his burden of demonstrating a subjective expectation of privacy by relying solely on evidence submitted by the government). An affidavit or testimony from a defendant is nearly essential for establishing that defendant's subjective expectation of privacy for Fourth Amendment purposes. *Id.; United States v. Meyer,* 157 F.3d 1067, 1080 (7th Cir.1998) (citing *Ruth,* 65 F.3d at

604–05); *see also United States v. Torres,* 32 F.3d 225, 229 (7th Cir.1994) (affirming district court's conclusion that defendant lacked standing to challenge search because he failed to submit testimony or affidavit to establish his expectation of privacy). The testimony of Williams and Gardner is woefully insufficient to establish Defendant's subjective expectations with regard to 798 Porter Street.

■ As for Defendant's affidavit, the Court is unimpressed. First, having presided over Defendant's trial (during which Defendant dabbled with self-representation by presenting opening arguments and cross-examining several witnesses) and several post-trial hearings during which Defendant testified, the Court is in a position to assess Defendant's credibility. His credibility is, to say the least, lacking. Second, Defendant's bare-bones affidavit neither includes nor attaches *any* evidence to substantiate his claim that he "was a renter" of 798 Porter Street. Indeed, Defendant's affidavit raises more questions than it answers. From whom was Defendant renting? When did the rental begin? Where is the lease agreement? What was the monthly fee? How was it paid? What documents reflect that payments were actually made? Did payments stop after GRIT agents searched the property on December 3, 1999, or did they continue until Defendant was arrested on October 5, 2000?[1] Third, Defendant's claim that "access was restricted to those without keys" is substantially undercut by Gardner's testimony that, although he did not have a key, he sold crack from the house in 8–hour shifts during the two weeks before the search. Recall also that Gardner was arrested *alone* inside the property. Fourth, Defendant's conclusory, legalistic claim that he "had an expectation that [he] would [have] privacy in 798 Porter Street" is convenient, but not convincing. At least three different people worked 8–hour shifts selling crack to customers who went inside 798 Porter Street. During one shift alone, 19 customers bought crack in that manner. Such an arrangement cannot credibly give rise to any expectation of privacy by Defendant. *See Silva,* 247 F.3d at 1056 (criticizing defendants' "bald assertions in their declarations that they had a reasonable expectation of privacy"). Without more, the Court cannot credit Defendant's thread-bare claims that: (1) he was renting 798 Porter Street; (2) access was restricted to those without keys; or (3) he had an expectation of privacy in the property. Defendant's incredible, contradicted and conclusory affidavit is insufficient to demonstrate a subjective expectation of privacy by Defendant. For that reason alone, Defendant's motion to suppress must fail.

Even if the Court were willing to overlook Defendant's credibility problems and accept the unsupported and otherwise contradicted assertions and conclusions in his affidavit, the Court would not conclude that, based on the totality of the circumstances, Defendant could demonstrate a legitimate expectation of privacy in 798 Porter Street. The Court's conclusion is informed by an analogous Seventh Circuit case and the fact that 798 Porter Street was being used for commercial—not residential—purposes.

---

1. "Of course this is not to say that the Fourth Amendment protects only the Lord of the Manor who holds his estate in fee simple. People call a house 'their' home when legal title is in the bank, when they rent it, and even when they merely occupy it rent free—*so long as they actually live there.*" *Carter,* 525 U.S. at 95, 119 S.Ct. 469 (Scalia, J., concurring) (emphasis in original). The Court's point in the instant case is that Defendant utterly failed to substantiate his claim of being a "renter." The Court is *not* suggesting that Defendant would only be entitled to the Fourth Amendment's protections if he actually paid money to rent 798 Porter Street.

First, in *Ruth*, the Seventh Circuit affirmed the district court's conclusion that the defendant failed to establish a legitimate expectation of privacy in a garage from which evidence of a methamphetamine laboratory was seized. 65 F.3d at 605. After concluding that the defendant improperly attempted to rely on the government's evidence in order to demonstrate his *subjective* expectation of privacy in the garage, the district court went on to assess whether *all* the evidence was sufficient to establish the defendant's legitimate expectation of privacy. *Id.* The district court concluded that the following evidence was *insufficient* to establish a legitimate expectation of privacy: (1) that the defendant had leased the garage; (2) that the defendant had been seen on the premises; (3) that the defendant and at least one other person had keys to the garage; and (4) the lack of evidence that the defendant had made "any kind of concerted effort to keep people out." *Id.* The evidence also showed that the defendant had arranged for electrical service to begin at the garage on the same day that certain precursor chemicals were delivered to it. *Id.* at 602. The Seventh Circuit agreed, concluding that the "evidence is not sufficient to" establish the defendant's "privacy interest." *Id.* at 605.

The same conclusion applies here: The facts, including those in Defendant's incredible and conclusory affidavit, are simply insufficient to establish a legitimate expectation of privacy sufficient for Defendant's challenge to the search. Similar to the defendant in *Ruth*, Defendant was not living at 798 Porter Street. Also as in *Ruth*, Defendant leased 798 Porter Street, had been seen on the property, possessed a key, and made arrangements for gas/electrical service. However, just as in

*Ruth*, the evidence also shows that someone else had a key to the property. This undercuts Defendant's claimed expectation of privacy. Further eroding Defendant's claimed expectation of privacy is the fact that at least one person who did not have a key (Gardner) had repeated access to the property during his shifts. Also counting against Defendant is the fact that he never claimed ownership of any of the seized items. *See Sarkisian*, 197 F.3d at 987 ("though the failure to allege ownership of the items seized, by itself, could not bar standing to challenge the search, it is a factor to be considered"). Finally, again as happened in *Ruth*, the evidence shows that, by allowing a stream of customers to come and go from the property at will, Defendant made no "concerted effort to keep people out." *Ruth*, 65 F.3d at 605; *see also Blaze*, 143 F.3d at 590 ("'any precautions taken to exclude others or otherwise maintain a privacy interest will heighten the legitimate expectation of privacy in the protected area'") (quoting *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 449 (9th Cir.1983)). These facts, taken together, are insufficient to establish a legitimate expectation of privacy in 798 Porter Street.

■ Second, the Court's conclusion that Defendant could not demonstrate a legitimate expectation of privacy—even with the benefit of the incredible and conclusory claims in his affidavit—is bolstered by the fact that 798 Porter Street was being used solely for commercial purposes on December 3, 1999. Neither Defendant nor anyone else was living at the property. Instead, it was essentially a storefront staffed 24–hours–a–day by workers who freely allowed customers to enter, exchange money for goods, and leave. For Defendant, 798 Porter Street was, at most, "simply a place to do business." [2] *Carter*,

---

**2.** In his January 15, 2003, memorandum, Defendant argues that 798 Porter Street is not commercial property. In support, Defendant

525 U.S. at 90, 119 S.Ct. 469. As commercial property, 798 Porter Street must be "treated differently for Fourth Amendment purposes than residential property," and the resulting expectation of privacy is "'less than[ ] a similar expectation in an individual's home.'" *Id.* (quoting *Burger*, 482 U.S. at 700, 107 S.Ct. 2636).

■ Factors to be considered in determining whether a person has a reasonable expectation of privacy in commercial premises include: (1) whether the person shared the area with anyone else; (2) whether others could be expected to enter the area or disturb papers in it without permission; and (3) whether the person has a key. *Evaschuck*, 65 F.Supp.2d at 1364 (citing *O'Connor v. Ortega*, 480 U.S. 709, 718, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987); *Mancusi v. DeForte*, 392 U.S. 364, 369, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968)). Once again, Defendant comes up short. First, the evidence shows that he shared 798 Porter Street with at least four other people: Dennis Best, Williams, Gardner, and Eric. Second, the evidence shows that at least 19 customers entered the property in a single 8–hour period. This kind of activity went on all day and night for at least two weeks before the search. Third, although Defendant had a key, so did Dennis Best. Anyway, the key "tends to show only that he was permitted to enter the [property]; it proves nothing about the duration of that permission or about his expectation of privacy therein." *Silva*, 247 F.3d at 1056; *see also United States v. Chaves*, 169 F.3d 687, 691 (11th Cir.1999)

(noting that, although possession of key to warehouse would not independently establish defendant's reasonable expectation of privacy, defendant had the *only* key).

The case law leaves some doubt about whether the lower expectation of privacy accompanying commercial property requires defendants who are challenging searches of such property to make a more substantial showing of their subjective expectation of privacy or, instead, reduces the chance that their subjective expectations are the kind society is prepared to recognize as reasonable under the objective test. *But see Evaschuck*, 65 F.Supp.2d at 1365 (concluding that defendant had subjective expectation of privacy in his office and then considering government's argument that defendant's expectation was not reasonable). Regardless of whether the reduced expectation of privacy for commercial property is placed on the subjective or objective side of the ledger, Defendant's showing is otherwise so weak that it cannot stand the additional weight. In short, Defendant's commercial use of 798 Porter Street is yet another reason for the Court to conclude that Defendant cannot pursue his motion to suppress.

■ Defendant has not met his burden to demonstrate the legitimate expectation of privacy necessary to pursue his motion to suppress. Defendant's affidavit is not credible, is conclusory, and is contradicted by other evidence. It deserves little or no weight. Without it,

---

attaches as an exhibit a January 14, 2003, letter from a Gary, Indiana zoning enforcement officer. The letter states that "798 Porter St., Gary, Indiana is zoned R3 (Single Family)." Unfortunately for Defendant, his exhibit does not indicate whether 798 Porter Street was also zoned as residential property on December 3, 1999. The fact that the property is *currently* in a residential zone is irrelevant.

More broadly, the Court is not persuaded that the technical zoning status of 798 Porter Street should affect this Court's analysis of whether the property was being used for commercial purposes on December 3, 1999. Defendant's conviction on multiple counts of the superseding indictment shows that he has no respect for the federal criminal drug statutes. Why should the Court believe he would follow the City of Gary's zoning ordinances?

Defendant is unable to demonstrate his subjective expectation of privacy in 798 Porter Street. Additionally, even taking as true the assertions in Defendant's affidavit, the Court would conclude that, based on the totality of the circumstances, Defendant could not demonstrate a legitimate expectation of privacy in 798 Porter Street, especially because the property was being used for a commercial purpose.[3]

*Final Briefs on Defendant's Remaining Motions to Suppress*

Rather than prolonging the November 15, 2002, hearing, the Court allowed the parties to submit written final arguments on the motions to suppress. Then, on January 8, 2003, the Court ordered the parties to submit their written final arguments on the motions related to Counts 2 and 3 by a specific date and "to include citations to the transcripts from the hearings on those motions." However, the Court has learned from its court reporter that neither party has ordered the transcripts for those hearings. In order to allow sufficient time for the parties to order, review, and utilize those transcripts in their written final arguments, the Court reluctantly extends the deadline for simultaneous submission of the written final

arguments to March 3, 2003. Following that, the Court will issue written orders on the remaining motions to suppress and Defendant's motions for a new trial.

*CONCLUSION*

For the reasons set forth above, Defendant's September 16, 2002, Motion to Suppress [Evidence Related to Count 8] and Memorandum is **DENIED**. The parties are **ORDERED** to submit, on or before March 3, 2003, their written final arguments on the motions to suppress the evidence underlying Counts 2 and 3 of the superseding indictment. The parties are **FURTHER ORDERED** to include citations to the transcripts of the hearings on those motions.

---

**3.** At the November 1, 2002, hearing, Vanes argued that the Government should not be allowed to contest Defendant's legitimate expectation of privacy in 798 Porter Street because Count 8 charged Defendant with maintaining the property for the purpose of distributing crack cocaine. The Court offered Defendant an opportunity to brief the issue of any contradiction between the Government's arguments and the indictment or jury verdict. Defendant later filed additional memoranda supporting his attack on the December 3, 1999, search of 798 Porter Street. (*See* Def.'s November 12, 2002, November 22, 2002, and January 15, 2003, filings.) Because none of those filings addressed the estoppel issue raised on November 1, 2002, the Court deems it waived. *See, e.g., Williams v. REP Corp.*, 302 F.3d 660, 666

(7th Cir.2002) (party waives an argument that it fails to develop).

Nevertheless, the Court notes that simply because Defendant "maintained" a place for the distribution of crack cocaine does not mean that he had a legitimate expectation of privacy in that place. *See United States v. Zermeno*, 66 F.3d 1058, 1061 (9th Cir.1995) (rejecting defendants' estoppel arguments after concluding that "possession" of seized goods or "maint[enance]" of proprietary interest in stash house cannot substitute for defendants showing legitimate expectations of privacy); *Silva*, 247 F.3d at 1057 (rejecting estoppel argument because "government's position, whether contradictory or not, cannot discharge [d]efendant's factual burden of establishing standing").