UNITED STATES of America, Plaintiff-Appellee,

v.

Frank CHAVES and Rafael Garcia, Defendants-Appellants.

No. 97-5864.

United States Court of Appeals,

Eleventh Circuit.

March 9, 1999.

Appeals from the United States District Court for the Southern District of Florida. (No. 96-1013-CR-SH), Shelby Highsmith, Judge.

Before HATCHETT, Chief Judge, BARKETT, Circuit Judge, and RONEY, Senior Circuit Judge.

BARKETT, Circuit Judge:

Frank Chaves and Rafael Garcia appeal their convictions for conspiring to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and for possessing cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). Garcia also appeals from his conviction for knowingly carrying a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c).

BACKGROUND

On December 12, 1996, agents of the Drug Enforcement Administration ("DEA") received information from a confidential informant relating to drug trafficking in Miami, Florida. Based on the information provided, the DEA developed a plan to seize approximately 240 kilograms of cocaine using the informant's van. The informant was to provide the keys to the van to a third person, who would then pick up the drugs and return with the van. Although DEA agents surveilled the food court at the shopping mall where the hand-off of the keys was to take place, they did not see the person to whom the informant gave the keys. DEA agents, however, did see Frank Chaves drive off in the informant's van. Using both car and helicopter, the DEA surveilled the van. Chaves, driving the informant's van, stopped at a warehouse in Hialeah Gardens, and departed a short time thereafter. Chaves then drove the van to a Miami Subs restaurant and entered. While Chaves was in the restaurant, a DEA agent approached the van and saw several boxes

in an area that was previously empty. DEA agents then proceeded to arrest Chaves and search the van, seizing ten boxes containing 240 kilograms of cocaine, some money, and keys belonging to Chaves.[1]

Shortly after arresting Chaves, DEA agents, who were still surveiling the warehouse, arrested Rafael Garcia and John Torres as they exited the warehouse. Both men were carrying firearms at the time of their arrest. The door of the warehouse was locked and none of the keys taken from Garcia and Torres could open the warehouse. The agents at the warehouse then waited approximately forty-five minutes outside the warehouse with Garcia and Torres in custody. At this time, the agents at the warehouse, who had been joined by those arresting Chaves, conducted a warrantless entry of the warehouse, which was opened by "jimmying" the door using a knife blade. During the sweep of the warehouse, which lasted approximately five to ten minutes, the agents saw boxes similar to those found in the van.

At this point, a search warrant affidavit was drafted, relying on information obtained both before and as a result of the warrantless entry. Late in the evening of December 12, a search warrant was obtained for the warehouse and executed. As a result of the execution of the warrant, DEA agents found approximately 400 kilograms of cocaine, as well as packaging material, boxes, gloves and items belonging to Chaves.

Chaves, Garcia, and Torres were subsequently indicted. After the district court denied motions by all the defendants to suppress evidence obtained by the DEA agents, Torres pled guilty. Chaves and Garcia went to trial and they were convicted as charged.[2] This appeal followed.

DISCUSSION

On appeal, both Chaves and Garcia argue that the search of the van and the warrantless entry at the warehouse violated their Fourth Amendment rights and, therefore, their motions to suppress the cocaine seized from the van and at the warehouse should have been granted. Chaves claims that the district court

---

[1]These keys, it turned out, were to the warehouse.

[2]The district court granted a motion for judgment of acquittal in favor of Chaves on the charge of carrying a firearm in relation to a drug trafficking offense.

erred in ruling that he did not have standing to challenge the entry of the warehouse, while Garcia argues that the district court erred in ruling that he did not have standing to challenge the search of the van. Both defendants also argue that the district court erred in denying their motions to disclose the identity of the confidential informant. Finally, Garcia argues that because the district court took over the suppression hearing from the magistrate judge after the magistrate judge had taken the testimony of one witness, he is entitled to a new suppression hearing.

Initially, we find no abuse of discretion in the trial court's denial of the motion to disclose the confidential informant. Likewise, we find no reversible error in Garcia's claim that the district court should not have completed the suppression hearing after the magistrate judge had already heard from one witness. Although we agree with Garcia that 28 U.S.C. § 636, which authorizes magistrate judges to hold hearings on motions to suppress, does not allow a district court and a magistrate judge to hear a motion to suppress together, cutting off the ability to object to the magistrate judge's credibility findings, we do not find that, under the specific circumstances here, reversal is warranted.

With reference to the Fourth Amendment issues raised, we turn first to the question whether Chaves' and Garcia's respective Fourth Amendment rights were implicated by the searches conducted by the police officers in this case. Although the parties label this inquiry as a question of standing, as did the district court, the Supreme Court recently reminded us that the question " 'is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.' " *Minnesota v. Carter,* --- U.S. ----, 119 S.Ct. 469, 472, --- L.Ed.2d ---- (1998) (quoting *Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). As *Carter* teaches, "in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable...." *Id.; see also United States v. Cooper,* 133 F.3d 1394, 1398 (11th Cir.1998).

Taking Garcia's claim first, we find no error in the district court's determination that Garcia lacked a reasonable expectation of privacy in the van. Garcia advances no facts to support any claim of an

expectation of privacy in the van other than a claim that the contraband in the van belonged to him. This, however, cannot establish that Garcia's Fourth Amendment rights were implicated by the search of the van. Garcia must show that he had a reasonable expectation of privacy in the place searched and he has failed to do so. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas,* 439 U.S. at 134, 99 S.Ct. 421.

Chaves, on the other hand, did have a reasonable expectation of privacy in the warehouse, and the district court erred in its finding to the contrary. As the government recognizes, lack of ownership is not dispositive. *See United States v. Garcia,* 741 F.2d 363, 365-66 (11th Cir.1984) ("[L]egal ownership is not a prerequisite for a legitimate expectation of privacy."). As the Supreme Court has recognized, in a variety of contexts, even where a defendant does not own the property searched, he or she may nonetheless have a reasonable expectation of privacy in that place by virtue of his or her relationship with that place. *See Carter,* 119 S.Ct. at 474 (holding that defendants lacked a legitimate expectation of privacy because they did not have a relationship with the home owner, but rather were "simply permitted on the premises"); *id.* at 478-79 (Kennedy, J., concurring) (recognizing that "almost all social guests have a legitimate expectation of privacy, and hence protection against unreasonable searches, in their host's home," but finding no such expectation here because defendants only had a "fleeting and insubstantial connection with Thompson's home"); *Minnesota v. Olson,* 495 U.S. 91, 96-100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (holding that an overnight guest had a legitimate expectation of privacy in his host's home); *O'Connor v. Ortega,* 480 U.S. 709, 714-19, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (recognizing that, in some circumstances, an employee has a reasonable expectation of privacy in his or her workplace).

Although Chaves did not own or formally rent the warehouse, we believe that his connection to the warehouse was sufficient to establish a reasonable expectation of privacy in the warehouse. *See United States v. Baron-Mantilla,* 743 F.2d 868, 870 (11th Cir.1984) (finding that defendant, who did not own or rent

4

premises searched, "could have established a legitimate expectation of privacy by demonstrating 'an unrestricted right of occupancy or custody and control of the premises as distinguished from occasional presence on the premises as a mere guest or invitee.' ") (quoting *United States v. Bachner,* 706 F.2d 1121, 1126 n. 6 (11th Cir.1983)).  The circumstances here lead us to conclude that Chaves was no "mere guest or invitee," but instead was much closer to that of one who maintained both "custody and control" of the warehouse.  Chaves had the only key to the warehouse, giving him a measure of control and ability to exclude others.  While possession of a key, without more, might not be sufficient to establish a reasonable expectation of privacy, *see Baron-Mantilla,* 743 F.2d at 870, Chaves seems to have had the only key and, what is more, he also kept personal and business papers at the warehouse.  In these circumstances, the Fourth Amendment protects Chaves' privacy interests in the warehouse.  *See Rakas,* 439 U.S. at 149, 99 S.Ct. 421 (recognizing that defendant in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) "could legitimately expect privacy" where he obtained a key to friend's apartment, giving him "complete dominion and control over the apartment," and he kept possessions there).  The government makes much of the fact that Chaves maintained his principal place of business in another warehouse.  Under the Fourth Amendment, however, an individual is not limited to one place of business;  the Fourth Amendment protects the reasonable expectation of privacy he or she has in multiple places.  *See Olson,* 495 U.S. at 96 n. 5, 110 S.Ct. 1684 (noting that the Fourth Amendment "provides sanctuary for citizens wherever they have a legitimate expectation of privacy").

We recognize that "[p]roperty used for commercial purposes is treated differently for Fourth Amendment purposes than residential property."  *Carter,* 119 S.Ct. at 474.  The Supreme Court has recognized that an "expectation of privacy in commercial premises ... is different from, and indeed less than, a similar expectation in an individual's home."  *New York v. Burger,* 482 U.S. 691, 700, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987).  Certainly, the government's ability to conduct searches of a warehouse is far broader than its ability to search a residence.  The fact that Chaves has a lesser expectation of privacy in the

5

warehouse vis-a-vis a residence, however, does not mean that he has no legitimate expectation of privacy in the warehouse. Accordingly, we find, in the particular circumstances presented here, that the district court erred in concluding that Chaves lacked a reasonable expectation of privacy in the warehouse searched by the police.

We now turn to consider appellants' arguments that the searches in this case violated the Fourth Amendment. Chaves argues that cocaine seized from his van should be suppressed because he was arrested without probable cause, making the search of the van incident to arrest impermissible. In the circumstances of this case, however, we find that the district court did not err in concluding that the police had probable cause to arrest Chaves. As noted above, the confidential informant told the police that the van, which Chaves was driving, was to be loaded with cocaine, the van was observed stopping briefly at a warehouse, and, immediately afterwards, boxes were observed in a previously empty area of the van. These facts, we conclude, were sufficient to establish probable cause to arrest Chaves and search the van and seize its contents incident to that arrest. *See United States v. Diaz-Lizaraza,* 981 F.2d 1216, 1222 (11th Cir.1993). We hold, however, that the initial warrantless entry of the warehouse under the auspices of conducting a "protective sweep" did not comport with the Fourth Amendment. In *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), the Supreme Court held that a properly limited protective sweep, conducted incident to an arrest, is permitted under the Fourth Amendment only "when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 337, 110 S.Ct. 1093. The Court in *Buie* permitted police officers to undertake protective sweeps in these instances because of the compelling "interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack," emphasizing that the intrusion was limited to "no more than necessary to protect the officer from harm." *Id.* at 333, 110 S.Ct. 1093.

Here, the government's own action undermines any claim that the entry had a protective purpose. It is undisputed that the sweep in this case did not immediately follow the arrest of Garcia and Torres outside the locked warehouse, but occurred a substantial time after the agents arrested Garcia and Torres. During the interim period, approximately forty-five minutes, the officers simply sat in their cars outside the warehouse. The agents, thus, saw no immediate need to enter the warehouse to protect themselves or other persons in the area. *Buie* requires officers to have "a reasonable basis for believing that their search will reduce the danger of harm to themselves or of violent interference with their mission," *id.* at 337, 110 S.Ct. 1093 (Stevens, J., concurring) and the facts show no such basis here.

Moreover, the government has failed to point to any "specific and articulable" facts that would lead a reasonably prudent officer to believe that, at the time of the sweep, a sweep was necessary for protective purposes. Much of the government's argument why a sweep was needed for protective purposes is not based on any specific facts in the government's possession, but rather is based on the lack of information in the government's possession. The testimony at the suppression hearing indicates that the officers had no information regarding the inside of the warehouse. However, in the absence of specific and articulable facts showing that another individual, who posed a danger to the officers or others, was inside the warehouse, the officers' lack of information cannot justify the warrantless sweep in this case. *See United States v. Colbert,* 76 F.3d 773, 778 (6th Cir.1996) ("Lack of information cannot provide an articulable basis upon which to justify a protective sweep."); *see also Sharrar v. Felsing,* 128 F.3d 810, 825 (3d Cir.1997) ("agree[ing] with ... *Colbert* that '[n]o information cannot be an articulable basis for a sweep that requires information to justify it in the first place' ").

The government also points to the fact that Garcia and Torres were arrested with weapons in their possession. However, this information "implies nothing regarding the possible presence of anyone being in [the warehouse]—the touchstone of the protective sweep analysis." *Sharrar,* 128 F.3d at 825; *see also Colbert,* 76 F.3d at 777 ("The facts on which officers may justify a *Buie* protective sweep are those facts

7

giving rise to a suspicion of danger from an attack by a third party during the arrest, not the dangerousness of the arrested individual."). Finally, the government notes that one of the agents believed that there was a large shipment of cocaine in the warehouse, making it unlikely that the cocaine would be left unguarded. However, none of the agents were able to see inside the warehouse and none of the agents offered any concrete factual basis for believing that there was either additional cocaine or individuals inside the warehouse. This is exactly the kind of "mere 'inchoate and unparticularized suspicion or hunch' " that *Buie* indicates is insufficient to support a warrantless sweep. *Buie,* 494 U.S, at 332, 110 S.Ct. 1093 (quoting *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).[3]

Having found that the warrantless entry violated the Fourth Amendment, we must consider whether the results of the subsequent search, conducted after the warrant was finally obtained, should have been suppressed. Under this Circuit's precedents, where, as here, the search warrant affidavit is based on information acquired as a result of an illegal entry, we must look to whether the other information provided in the affidavit is sufficient to support a probable cause finding. *United States v. Glinton,* 154 F.3d 1245, 1254-55 (11th Cir.1998). If so, suppression is not required because "the exclusionary rule has no application where the government learned of the evidence from an independent source," *id.* at 1255, provided, of course, that "the agents' decision to seek the warrant was [not] prompted by what they had seen during the initial entry...." *Murray v. United States,* 487 U.S. 533, 542, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). *Accord United States v. Markling,* 7 F.3d 1309, 1314-18 (7th Cir.1993); *United States v. Restrepo,* 966 F.2d 964, 968-72 (5th Cir.1992); *United States v. Herrold,* 962 F.2d 1131, 1139-44 (3d Cir.1992); *United States v. Gillenwaters,* 890 F.2d 679, 681-82 (4th Cir.1989); *United States v. Salas,* 879 F.2d 530, 536-39 (9th Cir.1989); *United States v. Veillette,* 778 F.2d 899, 903-04 (1st Cir.1985). Even discounting that portion of the affidavit describing information uncovered during the unconstitutional warrantless entry, the balance of

---

[3]The government also notes that there was a cafeteria and a school in the vicinity of the warehouse. However, the testimony showed that there were no civilians near the warehouse at any time leading up to the warrantless entry.

the affidavit supports a finding of probable cause. Further, there is nothing in the record to suggest that the police officers sought the warrant because of what they saw during the illegal entry into the warehouse. In light of the information from the confidential informant, the fact that the previously-empty van was seized with cocaine just after a short stop at the warehouse, and the seizure of Garcia and Torres, all of which supported the search warrant, we cannot say that the officers were prompted to seek a warrant based on what they had seen during the unconstitutional warrantless entry. Under *Glinton,* therefore, the district court did not err in admitting as evidence the cocaine and other items seized at the warehouse.

Accordingly, the judgment of the district court is AFFIRMED.