KRAVITCH, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s decision to affirm the convictions and sentences of Sidney and Leondray Gibson. But, because I believe that James Gibson had standing to challenge the search of the vehicle he paid for, controlled the use of, and routinely drove, I respectfully dissent from that portion of the majority’s opinion.
The majority opinion, with little factual analysis, concludes that James Gibson was merely a borrower of the Chevy Avalanche and therefore lacked standing to challenge the vehicle’s search when Kelvin Burton was stopped while driving it. I believe that this analysis overlooks several critical facts that establish that James Gibson was not merely a borrower, but was rather effectively a co-owner, with a reasonable expectation of privacy in the Avalanche. See Minnesota v. Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (holding that a defendant’s expectation of privacy must have “a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society”); United States v. Garcia, 741 F.2d 363, 366 (11th Cir.1984) (requiring that the challenger of a search “demonstrate a significant and current interest in the searched premises in order to establish an expectation of privacy”).
Although it is true that the Avalanche was titled in Burton’s name, Burton conceded that he exercised no control over the truck. He had no authority to drive the Avalanche whenever he wanted. Indeed, Burton testified that he “didn’t drive the truck.” The Avalanche was, according to Burton, “used as a work truck for the [upholstery and detailing] business” that James Gibson owned. As part of his business expenses, James Gibson paid the insurance and maintenance on the Avalanche. And Burton was never a partner in that business or even a part of it in any way.
Rather, the business in which James Gibson and Burton partnered was their drug trade. The two had different roles in this task: Burton registered the Avalanche, while James Gibson maintained it, paid for its insurance, and almost always drove it. Indeed, testimony at the suppression hearing shows that ownership in the instruments of the crime — stash houses and the Avalanche — was a central part of Burton’s role in the conspiracy. That Burton shared an ownership interest does *1284 not deprive James Gibson of his expectation of privacy in the Avalanche. Based on the totality of the evidence, it is apparent to me that James Gibson controlled use of the Avalanche, usually to the exclusion of Burton, and that he had a reasonable expectation of privacy in the vehicle. See United States v. McKennon, 814 F.2d 1539, 1543 (11th Cir.1987) (“Whether an individual possesses a constitutionally protected privacy interest depends upon the totality of circumstances.” (citing Rawlings v. Kentucky, 448 U.S. 98, 105, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980))).
James Gibson’s reasonable expectation of privacy in the Avalanche is bolstered by the testimony of government witnesses at the suppression hearing. Drug Enforcement Agency agent Gregory Millard testified that the DEA’s suspicion that James Gibson — not Burton — was involved in drug-trafficking was “the purpose for having the tracking device installed on the Chevy Avalanche.” Millard personally observed James Gibson driving the Avalanche, and he saw the vehicle “routinely parked in [Gibson’s] driveway .... ”[1] Agents observed James Gibson driving the Avalanche the day before the stop, and they requested that local police conduct a stop based on the sum of information they obtained about James Gibson from James Gibson’s consistent activity in the truck. That is, the police’s interest in the truck was tied exclusively to their interest in James Gibson — not Burton.
The majority concludes that, despite James Gibson’s consistent use of the Avalanche, his payment for its insurance and expenses, and his control over its use, he lacked standing to challenge the vehicle’s search. In light of the pragmatism with which we must view expectations of privacy protected by the Fourth Amendment, I cannot agree that these facts are insufficient to confer standing on James Gibson under our precedent. See United States v. Chaves, 169 F.3d 687, 691 (11th Cir.1999) (concluding that a defendant had standing to challenge the search of a warehouse he did not legally own when he “maintained both custody and control of the warehouse,” including by having the “ability to exclude others” (internal quotation marks omitted)); United States v. Sarda-Villa, 760 F.2d 1232, 1236 (11th Cir.1985) (“If the appellant does not own or rent the premises searched, ... he may establish standing by demonstrating an unrestricted right of occupancy or custody and control of the premises as distinguished from occasional presence.” (internal quotation marks omitted)); Garcia, 741 F.2d at 365-66 (“[L]egal ownership is not a prerequisite for a legitimate expectation of privacy.”).[2] To ignore *1285 James Gibson’s right to exclude others from the vehicle’s use, payment of the vehicle’s expenses, and regular possession of the vehicle blinks practical facts and overemphasizes relatively minor legal ones.[3] See McKennon, 814 F.2d at 1543. It also suggests, incorrectly, that no more than one individual may simultaneously have a reasonable expectation of privacy in an automobile.
Further, the majority concedes that, even as a borrower, James Gibson had standing to challenge the placement of the GPS tracking device. But then the majority concludes James Gibson cannot challenge the evidence against him directly obtained through exploitation of that unlawful search. This bait-and-switch contravenes black-letter Fourth Amendment law and renders the Supreme Court’s decision in United States v. Jones, — U.S. -, 132 S.Ct. 945, 949, 181 L.Ed.2d 911 (2012), an empty formality. See United States v. Noriega, 676 F.3d 1252, 1259 (11th Cir.2012) (emphasizing that the exclusionary rule “bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation” and “‘also prohibits the introduction of derivative evidence ... that is ... acquired as an indirect result of the unlawful search’ ” (quoting Murray v. United States, 487 U.S. 533, 536-37, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988))), cert. denied, — U.S. -, 133 S.Ct. 957, 184 L.Ed.2d 744 (2013).
The majority’s approach not only unnecessarily elevates form over substance, but it also has the potential to create problems for police investigating drug activity. This case provides an apt example: If police sought to secure a warrant for a GPS tracking device, now required by the Supreme Court’s ruling in United States v. Jones, — U.S. -, 132 S.Ct. 945, 949, 181 L.Ed.2d 911 (2012), under the majority’s approach, they would also need to conduct a title search, because who has legal ownership is the critical fact for deciding which person has a reasonable expectation of privacy at that time. In this case, that search would have led police to a person different from the one they were investigating — and one about whom police may have no other information. This curveball injects additional uncertainty into the entire investigatory process. If, instead, the focus is on the person who exercises control over the vehicle on an everyday basis, police need not be distracted from closing the net on the suspect they know by having to connect a newly discovered individual they do not know to the criminal activity they were investigating.
Because I would hold that James Gibson had standing to challenge the search, I would reverse his convictions and sentence based on United States v. Jones, in which the Supreme Court held that placement of a GPS tracking device on a vehicle constitutes a search and therefore that the war-rantless placement of that device violates the Fourth Amendment’s prohibition on unreasonable searches. 132 S.Ct. at 949.[4]

. The majority says that Agent Millard testified "that the officers found papers in the Avalanche that belonged to Burton, Sidney Gibson, Leondray Gibson, and James Gibson” and posits that this "undermines any argument that James Gibson had exclusive custody and control of the vehicle .... ” First, as discussed more fully below, James Gibson is not required to show that he had "exclusive custody and control” of the Avalanche. Second, the majority's statement glosses over the actual contents of these documents. Of the dozens of documents found in the car, the only documents attributable to Sidney or Leondray Gibson are four money transfer receipts. All the rest are attributable to James Gibson or Kelvin Burton, and the lion’s share is attributable exclusively to James Gibson. Thus, the documents in no way undermine our conclusion that James Gibson had the kind of custody and control over the Avalanche sufficient to confer standing on him to challenge the vehicle’s search.

. Although plainly these cases do not involve situations that are factually identical to the facts at issue here, that hardly means they are not persuasive, and, in my opinion, together conclusive that Gibson, a co-owner of the Avalanche, had standing to challenge the search.

. The majority seems to confuse a defendant’s “control and ability to exclude others,” Chaves, 169 F.3d at 691, with “exclusive custody and control” and "power to exclude all others.” Although the power to exclude all others would certainly be indicative of a reasonable expectation of privacy, this court has never required a defendant to demonstrate the latter, as the majority now requires of Gibson. Testimony in this case shows that Gibson consistently had custody and control over the Avalanche, and was even able to exclude Burton, the legal owner of the car. I fail to see what more the majority can require of Gibson under our precedent.

. The government, for the first time in a letter citing supplemental authority, argued that the exclusionary rule should not apply because *1286 police reasonably relied on binding precedent at the time they placed the GPS tracking device. See Davis v. United States, — U.S. -, 131 S.Ct. 2419, 2428-29, 180 L.Ed.2d 285 (2011). I would conclude that the government abandoned this argument by failing to raise it in its initial brief, even though the Supreme Court had already granted certiorari in Jones when that brief was due. See United States v. Jones, - U.S. -, 131 S.Ct. 3064, 180 L.Ed.2d 885 (2011) (granting certiorari on June 27, 2011); Red Br. (filed September 14, 2011); see also United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir.1998) (emphasizing that failure to offer argument on an issue on appeal constitutes abandonment). Notably, the cases the government cites in support of this proposition were decided before the briefing deadlines in this case; accordingly, they are an improper basis for supplemental authority regardless of their substantive merit. See, e.g., Davis, 131 S.Ct. at 2419 (decided June 16, 2011); see also Fed.R.App. P. 28(j).