[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14332
Non-Argument Calendar
_____

D.C. Docket No. 4:13-cr-00109-MW-CAS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BERNAL EMILE,
NELINO EMILE

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(June 29, 2015)

Before MARCUS, JULIE CARNES, and EDMONDSON, Circuit Judges.


PER CURIAM:


Bernal and Nelino Emile ("Defendants") appeal their convictions for possession and distribution of marijuana. No reversible error has been shown; we affirm.

In June 2013, a manager at the United Parcel Services ("UPS") store contacted police about two suspicious packages that had been dropped off for overnight delivery to a California address. On the package invoices, the sender used Bernal's name and address and described the package contents as stereo equipment. The UPS manager reported to police that the packages' seams were heavily taped, the packages had a chemical odor, and the sender had declined to consolidate the two packages to save money on shipping.

When Officer Randolph arrived at the UPS store, he told the UPS manager not to open the packages on behalf of the police. Officer Randolph also told the UPS manager that common carriers had the right to inspect packages administratively if they suspected that a package contained a hazardous substance. At some point, Officer Randolph also said that he detected a faint odor of burnt marijuana on the packages.

2

The UPS manager decided to open the packages, each of which consisted of an outer and inner box with heavily-taped seams, several layers of bubble wrap, carbon paper, and a vacuum-sealed bag. Inside each box was a large sum of cash, totaling $28,300. The packages contained no stereo equipment.

Officer Randolph watched as the UPS manager opened the packages, but the police did not participate physically in the search. Officer Randolph then seized the money based on his suspicion that the money was connected to drug sales. A police dog later alerted to the presence of narcotic odors on the money.

Two days later, Officers Morris and Gereg visited the address listed on the UPS package invoices. Bernal answered the door, stepped outside, and closed the door behind him. The officers detected a "strong odor" of marijuana coming from the apartment and noticed that, stuck to Bernal's sock, was a strip of plastic from a vacuum-sealed bag. Bernal told the officers that he had shipped the two UPS packages in question and that the packages contained stereo equipment. The officers then detained and handcuffed Bernal so they could obtain a search warrant for the apartment.

Meanwhile, Bernal told the officers that his brother, Nelino, was inside the apartment. Officer Morris opened the apartment door, called out "Police," and instructed anyone inside to come out. Nelino came outside and was handcuffed immediately. Officer Morris then conducted a "protective sweep" of the apartment

3

to be sure no one else was inside.  During the sweep, Officer Morris saw evidence of marijuana, but seized nothing.  Officer Gereg then went to obtain a search warrant.

While Defendants and officers waited outside the apartment, a local news crew arrived.  At the officers' suggestion, Defendants agreed to wait just inside the front door of the apartment to avoid the media.

After the search warrant arrived, a search of Defendants' apartment revealed evidence of marijuana, guns, various packing materials, and UPS receipts.

In the district court, Defendants moved to suppress evidence found during the searches of the UPS packages and of Defendants' apartment.  After a hearing, the district court granted the motions in part.  In pertinent part, the district court found and concluded that (1) the opening of the UPS packages by the UPS manager was a private search that constituted no "joint venture" between the UPS manager and Officer Randolph; (2) no articulable reason existed to justify Officer Morris's warrantless "protective sweep" of Defendants' apartment, which encompassed both the opening of Defendants' apartment door and the sweep inside the apartment; (3) after redacting the information obtained during the improper protective sweep, the search warrant affidavit still contained sufficient information to establish probable cause to search Defendants' apartment; (4) Defendants

4

consented to enter the apartment while waiting for the search warrant; and (5) no search of Defendants' apartment occurred before the search warrant arrived.

## I. UPS Packages

In reviewing a district court's ruling on a motion to suppress, we review findings of fact for clear error and review de novo the application of law to those facts. United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999). We construe all facts in the light most favorable to the prevailing party and afford substantial deference to the factfinder's explicit and implicit credibility determinations. United States v. Lewis, 674 F.3d 1298, 1303 (11th Cir. 2012). We accept the district court's credibility determination "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). We also defer to the district court's factual determinations unless the district court's understanding of the facts is "unbelievable." Id.

"A search by a private person does not implicate the Fourth Amendment unless he acts as an instrument or agent of the government." United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003). In determining whether a private citizen acted as a government agent, we consider "(1) whether the government

knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." Id. As part of our inquiry, we also consider whether the government "openly encouraged or cooperated in the search." See United States v. Ford, 765 F.2d 1088, 1090 (11th Cir. 1985) (affirming denial of a motion to suppress in part because nothing evidenced that the government openly encouraged or cooperated in the private citizen's search); see also United States v. Smythe, 84 F.3d 1240, 1243 (10th Cir. 1996) (noting that the "knowledge and acquiescence" criteria "encompass the requirement that the government agent must also affirmatively encourage, initiate or instigate the private action.").

Considering the totality of the circumstances, the district court committed no error in determining that the UPS manager acted as a private citizen -- and not as an agent of the government -- when he opened the two UPS packages. The record shows that the UPS manager became suspicious about the packages and, thus, contacted the police, because (1) the packages' seams were heavily taped, (2) the packages had a chemical odor, and (3) the sender refused to consolidate the two packages to reduce shipping charges.

We accept the district court's factual findings that (1) Officer Randolph did nothing significant to encourage the UPS manager to open the packages, even though Officer Randolph mentioned that the packages smelled of marijuana; and

6

(2) Officer Randolph never participated physically in the search.  The district judge rejected expressly some kind of wink-and-nod conduct on the part of the police for the search.  Officer Randolph told the UPS manager expressly <u>not</u> to open the packages <u>for</u> the benefit of the police.  Instead, the UPS manager decided -- based on his own suspicions and as a matter of UPS company policy -- to open the packages himself.  Viewing the evidence in the light most favorable to the government, the UPS manager's search of the two packages constituted a search by a private citizen, triggering no Fourth Amendment protection.

Because the UPS packages were searched lawfully, we reject Defendants' assertion that evidence seized during the later search of Defendants' apartment must be excluded under the "fruit of the poisonous tree" doctrine.  For background, see <u>United States v. Terzado-Madruga</u>, 897 F.2d 1099, 1112-13 (11th Cir. 1990).

## II.  <u>Probable Cause for Arrest</u>

Bernal argues that the police lacked reasonable suspicion or probable cause to detain him before searching his apartment.  Because Bernal failed to raise this argument in the district court, we review only for plain error.  <u>See United States v. Clark</u>, 274 F.3d 1325, 1326 (11th Cir. 2001).

Even if we assume -- without deciding -- that Bernal's detainment constituted an arrest, the arrest was supported by probable cause. "For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002). The probable cause standard is satisfied when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id.

Before arriving at Bernal's apartment, the officers knew that (1) someone using Bernal's name and address tried to ship two heavily-taped packages, containing a total of $28,300 in cash; (2) the sending of cash by a common carrier is a violation of Florida's money-laundering statute; (3) the packages' sender lied to UPS about the packages' contents; (4) the sender refused UPS's offer to consolidate the packages; and (5) a drug-sniffing dog alerted to the presence of drugs on the cash. Upon arriving at Bernal's apartment, the officers also observed (1) a "strong" odor of marijuana emanating from the apartment; and (2) a strip of plastic from a vacuum-sealed bag stuck to Bernal's sock. Bernal also told the officers that he in fact sent the two UPS packages and lied to the officers about the contents of the packages.

8

Based on the totality of the circumstances within the officers' knowledge, a prudent person would believe that Bernal was involved in a drug-related offense. Probable cause existed to arrest Bernal; the district court committed no plain error.

### III.  Searches of Defendants' Apartment

When a search warrant affidavit is based, at least in part, on information acquired illegally, we look to whether other information contained in the affidavit supports sufficiently a probable cause finding.  United States v. Chaves, 169 F.3d 687, 692 (11th Cir. 1999).  If it does, suppression of evidence is not required because the exclusionary rule does not apply "where the government learned of the evidence from an independent source."  Id. at 692-93.

When we redact the information obtained during the improper "protective sweep" of Defendants' apartment, the search warrant affidavit still contained sufficient information -- including evidence obtained during the search of the UPS packages and the officers' initial encounter with Bernal -- to support a probable cause finding.  And nothing evidences that the officers were prompted to seek a warrant only after conducting the protective sweep.  Because probable cause existed to support the issuance of a search warrant for Defendants' apartment, the

9

evidence obtained during the illegal protective sweep was admissible under the independent source doctrine.  See id.

Given the record and the district court's determinations, we reject Defendants' contention that officers conducted an illegal search when they and Defendants moved inside Defendants' apartment to avoid local news media. Although Defendants contend they agreed to enter the apartment only "at the suggestion of law enforcement," we accept that their consent was voluntary. Moreover, we accept that no officers engaged in a physical search of the apartment before the search warrant arrived.

AFFIRMED.