[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10478
Non-Argument Calendar
_____

D. C. Docket No. 0:14-cr-60103-BB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRANDON L. MEDINA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 6, 2015)

Before HULL, MARCUS and ROSENBAUM, Circuit Judges.

PER CURIAM:

Brandon Medina appeals his convictions for one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and one count of possession with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1).  On appeal, Medina argues that: (1) the district court erred when it denied his pretrial motion to suppress evidence found during and derivative of a purported "protective sweep" of his rented bedroom occurring after officers searched the home's common areas pursuant to consent given by the homeowner, McKenzie Israel; and (2) the district court violated the Confrontation Clause of the Sixth Amendment when it refused to allow him to cross-examine witnesses and make certain arguments.  After thorough review, we affirm.

A district court's ruling on a motion to suppress presents a mixed question of law and fact.  United States v. Timmann, 741 F.3d 1170, 1177 (11th Cir. 2013). We review the district court's factual findings for clear error and the court's application of the law to the facts de novo.  Id.  Ambiguities in the record are resolved in favor of the party that prevailed below.  United States v. Delancy, 502 F.3d 1297, 1313 n.10 (11th Cir. 2007).  We allot substantial deference to the factfinder in reaching credibility determinations with respect to witness testimony. United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003).  We review the

district court's restrictions on cross-examination for clear abuse of discretion. United States v. Maxwell, 579 F.3d 1282, 1295 (11th Cir. 2009).

First, we find no merit to Medina's claim that the district court erred in denying his motion to suppress. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A reasonableness analysis under the Fourth Amendment focuses on the circumstances viewed objectively, regardless of an individual officer's state of mind. Brigham City, Utah v. Stuart, 547 U.S. 398, 404 (2006). Central to the protections the Fourth Amendment provides is "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Kyllo v. United States, 533 U.S. 27, 31 (2001) (quotation omitted). Thus, a warrantless search inside a home is presumptively unreasonable. Stuart, 547 U.S. at 403.

However, the Supreme Court has held that a properly limited "protective sweep," conducted incident to an arrest, is reasonable under the Fourth Amendment "when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 337 (1990). The Buie Court permitted police officers to undertake protective sweeps in these instances because of the compelling "interest of the officers in taking steps to

assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack," acknowledging that analogous intrusions were limited to nothing "more than necessary to protect the officer from harm." Id. at 333. Thus, a "protective sweep" must be "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Id. at 327.

In Buie, officers entered a home pursuant to an arrest warrant. Id. at 328. Buie was found and arrested after he emerged from the home's basement. Id. An officer then entered the basement to see if anyone else was in it, and uncovered incriminating evidence. Id. In concluding that this "protective sweep" was reasonable under the Fourth Amendment, the Court acknowledged that the fact that Buie had some expectation of privacy in the rooms of his house that officers had not searched prior to his arrest did not "mean such rooms were immune from entry." Id. at 333. The Court also acknowledged that an "ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings." Id. at 333.

While a protective sweep is generally performed incident to an arrest, we've held that it "may also be undertaken without an arrest warrant, so long as the officers are lawfully within the premises." Timmann, 741 F.3d at 1181. Under these circumstances, a protective sweep is lawful if (1) the officers are lawfully

within the premises, and (2) the officers possess a "reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger" to those on the scene. Id. (quoting Buie, 494 U.S. at 337).

We've held that a protective sweep was unlawful when officers, after arresting two suspects, sat in their cars and waited 45 minutes outside a warehouse before entering it and conducting a protective sweep. United States v. Chaves, 169 F.3d 687, 692 (11th Cir. 1999). In making that conclusion, we noted that the officers had no factual basis to believe that, after their suspects had been arrested, there were additional individuals inside the warehouse. Id.

Here, Medina argues that the "protective sweep" that officers performed of his rented bedroom was unreasonable under the Fourth Amendment because the officers did not have the requisite urgent concern for their safety. We disagree. Even assuming that Medina had a reasonable expectation of privacy in the bedroom he rented in Israel's house, Buie held that while a person may have a reasonable expectation of privacy in parts of their home not covered by the initial lawful entry, they are not immunized from a limited protective sweep. Moreover, the "protective sweep" of the house was similar to the sweep of the house in Buie, which the Supreme Court noted created a particular degree of risk to officers due to the home's relatively confined space. Indeed, officers would not have been familiar with Israel's home, and its small size made an ambush attack possible

5

from an undiscovered occupant of Medina's bedroom, which was visible from the living room area. Thus, the compelling interest of officers in making a "protective sweep" -- that is, protection from unexpected attacks in a house potentially harboring dangerous persons -- overcomes the expectation of privacy that Medina might have had in his bedroom.

Not only were the officers inside Israel's home lawfully on the "premises" of the entire house, including Medina's rented bedroom, the record supports the magistrate judge's conclusion that the officers possessed a reasonable belief that Medina's bedroom harbored an individual posing a danger to them. Contrary to Medina's assertions, the officer's testimony and investigative techniques were consistent with his reasoning for ordering the protective sweep -- the objectively reasonable belief that an individual on the scene posed a danger when the officers lawfully entered Israel's home and found the speed loaders, bullets, and drug paraphernalia. Plus, the officers had information from a confidential informant that a male named "Brandon" who sold heroin and carried a gun was living in the house, and the officers knew this person was inside the bedroom and that the weapon had not yet been found. Thus, unlike Chaves, where officers had no information about the presence of other individuals, the officers here knew that another individual was in the home. See Chaves, 169 F.3d at 692. Because both

prongs of the lawful "protective sweep" test were met, the district court did not err in denying Medina's motion to suppress.

Nor are we persuaded by Medina's claim that the district court abused its discretion when it refused to allow him to cross-examine witnesses and argue that Israel received a deal for non-prosecution in exchange for giving consent to search his home. While a district court has the discretion to rule on the admissibility of evidence, including the power to limit cross-examination, its discretion is limited by the Sixth Amendment's Confrontation Clause, which guarantees that a criminal defendant has the right to cross-examine prosecutorial witnesses. Maxwell, 579 F.3d at 1295. However, the Sixth Amendment in such a case is satisfied so long as a defendant is permitted cross-examination that "exposes the jury to facts sufficient to evaluate the credibility of the witness and enables defense counsel to establish a record from which he properly can argue why the witness is less than reliable." United States v. Barrington, 648 F.3d 1178, 1188 (11th Cir. 2011) (quotation omitted).

"[A] presumption favors free cross-examination on possible bias, motive, ability to perceive and remember, and general character for truthfulness." Maxwell, 579 F.3d at 1295-96. "However, the mere fact that [a defendant] sought to explore bias on the part of a prosecution witness does not automatically void the court's ability to limit cross-examination." Id. at 1296 (quotation omitted).

Rather, a defendant is only entitled to an opportunity for effective cross-examination, not a cross-examination that is effective in whatever way the defendant wishes. Id. Thus, a defendant can only cross-examine a witness about relevant information. Id.

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401. Selective prosecution is a defect that has no bearing on the determination of a defendant's factual guilt, and, thus, is an issue for the district court to decide, not the jury. United States v. Jones, 52 F.3d 924, 927 (11th Cir. 1995).

Medina has not shown that the district court abused its discretion when it prohibited him from arguing that a "secret deal" existed between the government and Israel. Medina's defense at trial, as he admits in his brief, was that Israel was in possession of the drugs found in the home, rather than him. Ultimately then, the existence or non-existence of the "secret deal" was immaterial to the factual disputes central to Medina's case. See Fed. R. Evid. 401(b). Although Medina noted prior to trial that he did not intend to advance a selective prosecution defense, Medina has not, on appeal, advanced any alternative reason for why the existence of a "secret deal" would have made it more likely that Israel possessed the drugs or less likely that Medina possessed the drugs. In any event, Medina

8

thoroughly cross-examined the government's key witness on the issues relevant to his defense, said in his opening statement that the evidence would show the drugs belonged to Israel, and argued the same in his closing argument.  Medina was thus given a fair opportunity to expose facts sufficient to evaluate the credibility of the witnesses and to advance his defense theory vigorously.  Therefore, the district court did not violate the Sixth Amendment's Confrontation Clause in refusing to allow Medina to pursue his "secret deal" theory at trial.

**AFFIRMED**.