[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13193
_____

D.C. Docket No. 3:17-cr-00119-WKW-SRW-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

HECTOR MANUEL BOSSIO,
a.k.a. Hector Manuel Bossio-Sotillo,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(August 21, 2020)

Before NEWSOM and BRANCH, Circuit Judges, and BAKER,[*] District Judge.

PER CURIAM:

A jury found Hector Bossio guilty of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), possession of a firearm in relation to a controlled substance offense, in violation of 18 U.S.C. § 924(c)(1)(A), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He was sentenced to 420 months' imprisonment.  On appeal, we must address the following issues: (1) whether, for Fourth Amendment purposes, Bossio had a reasonable expectation of privacy sitting in an overdue rental car, which the rental car company had reported as stolen, in the driveway of a home where a friend of his rented a room; (2) whether Bossio's counsel was constitutionally ineffective; (3) whether the district court erred by not compelling the production of certain documents and/or the testimony of certain witnesses; and (4) whether the district court erred by denying Bossio's motion for acquittal.  We will affirm.

**I**

**A**

The events underlying this appeal began when the Phenix City Police Department (PCPD) received a 911 call early in the morning about a suspicious

---

[*] Honorable R. Stan Baker, United States District Judge for the Southern District of Georgia, sitting by designation.

vehicle parked in the driveway of 1804 Timberland Drive—the caller said that no one was supposed to be at home at the time. Around 5:00 a.m., Officers Cutt and Bishop of the PCPD responded; Officer Cutt arrived on the scene first. The lights were off at the home, and Officer Cutt saw a car parked in the adjacent driveway. Because he was concerned that the car he saw was the suspicious vehicle mentioned in the 911 call—or that it could be related to a break-in—Officer Cutt decided to check it out. He walked up the driveway (there wasn't a separate sidewalk from the street), and once he could make out the tag number—about three quarters of the way up the driveway, 5–10 feet from the back of the car—he radioed it in to dispatch. The dispatcher checked the tag number and discovered that the car had been reported stolen.

Once Officer Bishop arrived at the scene, she and Officer Cutt approached the vehicle. They saw Bossio asleep in the driver's seat, and Officer Cutt knocked on the window to wake him up—he then asked Bossio to unlock and open the driver's side door. When Bossio opened the door, Officer Cutt saw a bag of meth in Bossio's lap. The officers then handcuffed Bossio and removed him from the car, which led to the discovery of a loaded, Derringer .22 caliber handgun in Bossio's seat. The officers were subsequently informed that there was a warrant for Bossio's arrest for theft by taking of a motor vehicle. Officers Cutt and Bishop searched Bossio and found $855 in his pants pocket. They also conducted an

inventory search of the rental car that turned up 12 individually packaged bags of meth, multiple cell phones, and a digital scale. The owner of the home—Kim Shearer—told law enforcement that she had not known that Bossio was in the driveway, that she knew him and was "very afraid of him, very scared of him," and that she hadn't given him permission to be at her home and didn't want him there.

**B**

After he was charged in a three-count indictment, Bossio filed a motion to suppress the evidence found in the search of his vehicle. He argued that Officer Cutt had trespassed into the curtilage of the Timberland Drive residence to see his vehicle and, accordingly, that "any search conducted after such intrusion, and the evidence collected, [were] all fruit of that illegal trespass." The government responded by arguing (1) that Bossio didn't have Fourth Amendment standing to challenge the search because he didn't have a sufficient interest in the Timberland Drive residence; (2) that the officers were lawfully present on the property; (3) that the area of the driveway where Bossio was parked wasn't within the curtilage of the home; and (4) that regardless, Bossio didn't have a reasonable expectation of privacy "sitting in a stolen car, visible from the street, during the late night hours in the driveway of a home which he neither owned nor resided in."

At a suppression hearing, evidence was presented that three other people— Ashley Story, Jamie McCrary, and Rafael Colon—were tenants at the Timberland

Drive residence. McCrary was a friend of Bossio's, and he had invited Bossio to stay the night at the Timberland Drive home on several previous occasions. According to Sherrie Hendrix, an overnight guest at the home on the morning in question, the Timberland Drive residence was a known "dope house"—it allegedly had an "open-door policy," and people were coming and going "all day long" to "use drugs and party." Donovan Harrington, Shearer's boyfriend, confirmed that the residence was a dope house where "20 to 30 people a day would be in and out."

Bossio testified at the suppression hearing that McCrary had spoken to him on the phone the night in question complaining of "girlfriend problems." Bossio said that McCrary's girlfriend Lacy had shown up at the home and caught McCrary with Hendrix, and McCrary had called Bossio to "bail him out." Bossio got to the home around 3:30 a.m., and at that time the residents "piled out of the house" in the midst of a loud argument. Bossio said that McCrary left to take his girlfriend Lacy to the hospital to treat a broken jaw, so Bossio decided to wait in the driveway (waiting out the "drama") until McCrary came back. It was while he was waiting that he had the interaction with Officers Cutt and Bishop that led to his arrest.

A magistrate judge issued an R&R in favor of denying Bossio's motion to suppress. She assumed—without deciding—that the portion of the driveway where Bossio was parked fell within the curtilage of the home, but she ultimately

5

concluded that Bossio had not established a reasonable expectation of privacy in the driveway.  The magistrate judge held that there was conflicting evidence as to Bossio's subjective expectation of privacy—although his vehicle was only partly visible from the street and was obscured by darkness, he stayed outside in the car in full view of anyone on the property, in lieu of entering the home.  As to his objective expectation of privacy, however, the magistrate judge found that the evidence was much clearer.  She noted that he did not live at or own the residence in question, nor did he keep any possessions there, receive mail there, or have the right to admit/exclude others there.  Indeed, the owner of the property—Shearer—feared him and said she didn't want him at her home.  Bossio "had not actually been invited to spend the night at the house on that night," but rather had been called over to help out his friend with girlfriend problems.  He never entered the home that morning—he just waited in the driveway for the "drama" to pass.  Although Bossio testified that he was at the home frequently, the magistrate judge noted that the residence was a known "dope house" with constant foot traffic from people coming and going to buy drugs and party.

The magistrate judge ultimately held that because Bossio "parked a stolen vehicle—that is, [a] car in which he had no expectation of privacy at all unless it was stationed within the curtilage of a home whose protection he was entitled to invoke—at a dope house with an 'open door policy,'" along "the normal route by

6

which visitors"—numbering as many as 200 per week—"would access the home," he had not established a reasonable expectation of privacy. The magistrate judge therefore declined to decide whether "the officers had a right to be on the property and cross the curtilage on legitimate police business to investigate the subject of the 911 call." The district court adopted the magistrate judge's R&R, overruling Bossio's objections to the report.

A jury found Bossio guilty on all counts, and the district court denied his motion for judgment of acquittal/motion for new trial. Bossio was sentenced to 360 months' imprisonment on Count 1, 120 months' imprisonment on Count 3 to be served concurrently to Count 1, and 60 months' imprisonment on Count 2 to be served consecutively to Counts 1 and 3.

This is Bossio's appeal.

## II

Bossio argues (1) that the police violated the Fourth Amendment by trespassing into the curtilage of the Timberland Drive residence and that the evidence that they discovered upon finding him in the car should have been suppressed; (2) that his counsel was constitutionally ineffective; (3) that the district court erred by not compelling the production of certain documents and/or the testimony of certain witnesses; and (4) that the district court erred by denying his motion for acquittal. We consider his arguments in turn.

7

**A**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. But "Fourth Amendment rights are personal rights which, like some other constitutional rights may not be vicariously asserted." *Brown v. United States*, 411 U.S. 223, 230 (1973). Accordingly, as a general matter, a person who claims a violation due to a "search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). Even so, a person "may nonetheless have a reasonable expectation of privacy in that place by virtue of his or her relationship with" it. *United States v. Chaves*, 169 F.3d 687, 690 (11th Cir. 1999).

As relevant here, "in some circumstances a person may have a legitimate expectation of privacy in the house of someone else." *Minnesota v. Carter*, 525 U.S. 83, 89 (1998). A "mere guest or invitee," however, does not have Fourth Amendment standing to challenge a search. *United States v. Baron-Mantilla*, 743 F.2d 868, 870 (11th Cir. 1984) (quotation omitted). Although "legal ownership is not a prerequisite for a legitimate expectation of privacy" in a dwelling, *United States v. Garcia*, 741 F.2d 363, 365–66 (11th Cir. 1984), a Fourth Amendment claimant must demonstrate that he has "an unrestricted right of occupancy or

8

custody and control of the premises," *Baron-Mantilla*, 743 F.2d at 870.  Factors that courts have considered to determine whether a person has a reasonable expectation of privacy in the home of another include whether he has personal belongings stored there, *Garcia*, 741 F.2d at 366, whether he was an invited overnight guest, *Minnesota v. Olson*, 495 U.S. 91, 98 (1990), and whether he has a "measure of control and ability to exclude others," *Chaves*, 169 F.3d at 691.

Bossio argues that he was an "invited guest" of McCrary—a tenant in the Timberland Drive residence—which he says means he had a legitimate right to privacy in the driveway of the home.  But as already explained, being an invited guest isn't sufficient:  Bossio was only present at the home for a few hours early in the morning to help McCrary with girlfriend problems—he wasn't an overnight guest.  Although Bossio testified that he had spent the night at the home before, he did not demonstrate any of the other indicia of control necessary to assert a Fourth Amendment claim.  He didn't have a key to the house, he didn't store any possessions there, and he didn't have a right to exclude people from the home. *See, e.g.*, *United States v. Rackley*, 742 F.2d 1266, 1270 (11th Cir. 1984) (holding that defendant lacked Fourth Amendment standing to challenge search of a garage even though he had stayed overnight in the home previously).  Accordingly, Bossio has not established Fourth Amendment standing to challenge this search, as

he lacked a sufficient interest in the Timberland Drive residence to establish a legitimate expectation of privacy there.[1]

**B**

After the magistrate judge issued her report recommending that Bossio's suppression motion be denied, Bossio filed a motion informing the trial court that he planned to represent himself in the proceedings. The district court subsequently appointed Bossio standby counsel. Bossio later filed a "Complaint of Ineffective Stand By Counsel, Objection to Any More Involvement by Attorne[y]." Shortly before trial, his current counsel began to represent him on a standby basis. He now appears to assert that that his counsel was ineffective and that the district court erred by "forcing" him to represent himself and refusing to appoint him new counsel.

Allegations of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To make out a claim of ineffective assistance of counsel, a "defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. The dispositive question is "whether counsel's conduct so undermined the proper

---

[1] Because we hold that Bossio lacked a reasonable expectation of privacy in the Timberland Drive residence—to say nothing of the residence's highly trafficked driveway—we need not address the parties' arguments whether the driveway was part of the home's "curtilage" or whether the police officers' entry a lawful exercise of "legitimate police business" unrelated to a search for evidence. *Coffin v. Brandau*, 642 F.3d 999, 1012 (11th Cir. 2011).

10

functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

A defendant may fire his counsel for any reason or for no reason at all. *United States v. Jiminez-Antunez*, 820 F.3d 1267, 1271 (11th Cir. 2016). But defendants with appointed counsel aren't entitled to the counsel of their choice—district courts may require them to choose between court-appointed counsel and self-representation. *See Jones v. Walker*, 540 F.3d 1277, 1290–91 (11th Cir. 2008). Defendants cannot "demand a different appointed lawyer except for good cause," and "[a] defendant's general loss of confidence or trust in his counsel, standing alone, is not sufficient." *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985). When a defendant cannot show good cause, the question becomes whether he knowingly and intelligently waived his right to counsel when he terminated his court appointed counsel. *Cf. Jones*, 540 F.3d at 1290–91.

Bossio's counsel-related claims are difficult to discern. At times, he seems to be arguing a traditional *Strickland*-based ineffective assistance claim. At others, he seems to contend that the district court erred by "forcing [him] to represent himself." In connection with these arguments, Bossio asserts (1) that he complained to the district court on several occasions about his counsel's "failure to provide tangible information and failure to consult with him as to material information in a timely manner"; (2) that he "was at an even more disadvantage

11

whereas [his present] counsel had only six weeks to aid [him] in his defense";

(3) that he "had issues retrieving certain documents from Phenix City, Alabama

administrators notwithstanding a proper subpoena for the same"; and (4) that

although he had asked his previous counsel to subpoena the documents he refused

to do so, which "caused Mr. Bossio to be without these documents at the

commencement of trial . . . ." Br. of Appellant at 29–30.

Bossio's allegations are very vague—he provides little detail about the

evidence that his counsel failed to procure, or how it would have made a difference

in his trial. His allegations are insufficient to support a colorable Sixth

Amendment claim. *See Tejada v. Dugger*, 941 F.2d 1551, 1560–61 (11th Cir.

1991) (holding that speculative, vague, or unsupported allegations cannot support a

valid Sixth Amendment claim). The record also demonstrates that the district court

appointed Bossio standby counsel, so he wasn't "forced" to represent himself. We

discern no counsel-related error.

## C

Bossio argues that the district court erred by not compelling several third

parties to provide certain pieces of evidence even though he had subpoenaed them.

Bossio asserts that he "attempted to procure the witnesses and material documents

from several entities such as the Phenix City Police Department, Columbus Police

Department (Georgia), and the City of Phenix City," and he also attempted to get

Officer Bishop to testify at his trial.  Br. of Appellant at 31.  Unfortunately for Bossio, he did not get his requested evidence from the City of Phenix City until the day after the trial ended.  Additionally, Bossio says that Officer Bishop "was a material witness as to the alleged offenses outlined in the Indictment" and that her "presence was so imperative that the United States Attorney's Office should have been forced to procure her whereabouts and call her as a witness to ensure all of the facts of this case were heard by the jury."  *Id.*

"[T]he Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him compulsory process for obtaining witnesses in his favor."  *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (internal quotation marks and citation omitted) (emphasis omitted).  The government is not legally bound to assist the defendant in presenting his case.  *See United States v. Saldarriaga*, 987 F.2d 1526, 1531 (11th Cir. 1993) (stating that the government is not bound to call certain witnesses or inform the defense about its intentions toward certain witnesses).

These claims occupy a mere two-and-a-half pages of Bossio's brief.  Bossio doesn't provide any meaningful information about what the requested documents purportedly say, nor does he provide detail about what he thought Officer Bishop would add that wasn't already presented at trial.  It does not appear to us that

13

Bossio was denied any sort of process—he apparently was able to subpoena the witnesses and documents in question, he just wasn't able to get Officer Bishop to testify or to get the requested documents from Phenix City on time. In any event, the evidence of guilt was overwhelming—Bossio was arrested with a bag of meth in his lap sitting on a loaded handgun, in a stolen rental car with other drugs and paraphernalia. As a result, any error that might have occurred was harmless.

**D**

Finally, Bossio argues that the district court erred in denying his motion for judgment of acquittal/motion for new trial. He contends that "the Government never presented the actual 911 call to dispatch or a witness that could testify to the call," which he asserts casts doubt on whether Officer Cutt was telling the truth about why he was at Timberland Drive that morning. Br. of Appellant at 34. He also alleges (so far as we can tell, without any evidence to back it up) that Officer Bishop—who did not testify at trial—"may have pending criminal charges of her own," and that her testimony might have conflicted with Officer Cutt's testimony had she taken the stand. *Id.* Bossio further asserts that Officer Cutt made several inconsistent statements throughout the proceedings.

Here, the evidence was sufficient for "a reasonable fact-finder [to] conclude that the evidence established" Bossio's guilt. *See United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002). His motion for judgment of acquittal/new trial was

14

properly denied.

## III

For the foregoing reasons, we affirm the district court's judgment.

**AFFIRMED**.